# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division



FILED
John E. Triplett, Acting Clerk
United States District Court

By CAsbell at 2:37 pm, Dec 14, 2020

```
CHARLES ALLEN FREEMAN, JR.,

     Plaintiffs,

v.                                  CV 220-015

NCRC; CENLAR FSB (CENTRAL LOAN
ADMINISTRATION & REPORTING);
and VENDOR RESOURCE MANAGEMENT
INC. as Manager for Secretary
of Veterans Affairs,

     Defendants.
```

## ORDER

Before the Court are Defendants Bay Equity, LLC ("Bay Equity") and Cenlar FSB's ("Cenlar") motion to dismiss, dkt. no. 27, Defendant Vendor Resource Management, Inc.'s ("VRM") motion to dismiss, dkt. no. 28, and Defendant McCalla Raymer Leibert Pierce, LLC's ("McCalla") motion to dismiss, dkt. no. 29. Plaintiff Charles Freeman, Jr., who is proceeding *pro se*, has filed no response to these motions, and the time for doing so has long passed.  Accordingly, the motions are ripe for review.

**BACKGROUND**[1]

**The Loan**

On August 27, 2018, Plaintiff executed a promissory note (the "Note") secured by a Security Deed for real property (collectively the "Loan") located at 127 Brookwater Drive, Brunswick, Georgia (the "Property"). Dkt. No. 25 ¶ 1. The Security Deed was recorded in Glynn County Superior Court. Dkt. No. 27-1.[2] Bay Equity was the original lender of the Loan. Id. Cenlar was the servicer for the Loan. Dkt. No. 25 ¶ 6. On May 20, 2019, Bay Equity assigned the Security Deed to Lakeview Loan Servicing, LLC ("Lakeview") (the "Assignment"). Dkt. No. 27-2. The Assignment was recorded in the Superior Court of Glynn County. Id.

**The Foreclosure**

Plaintiff defaulted on the payment obligations of the Loan. Dkt. No. 25 ¶ 139. Cenlar sent Plaintiff notices of arrearage. Id. ¶ 37. National Consumer Resource Center ("NCRC") reached out to Plaintiff, offering loan modification aid for a fee. Id. ¶ 22. Plaintiff paid NCRC $2,400 to negotiate a loan modification with Cenlar, but NCRC did not negotiate a loan

---

[1] Local Rule 7.5 provides that a party's failure to respond to a motion within the applicable time period shall indicate there is no opposition to a motion. S.D. Ga. LR 7.5.

[2] The Court can consider public records when deciding a motion pursuant to Federal Rule of Civil Procedure 12(b) without converting the motion to a motion for summary judgment. Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider.").

modification; instead, it "made" Plaintiff file for bankruptcy. Id. Plaintiff assumed NCRC was negotiating a loan modification with Cenlar and that there would be no foreclosure sale. Id. ¶ 37. A Notice of Sale was published in the Brunswick News on October 12, 2019, October 19, 2019, October 26, 2019, and November 2, 2019. Dkt. No. 27-5. Lakeview purchased the Property at a foreclosure sale on November 5, 2019, as reflected in the Deed Under Power recorded with the Glynn County Superior Court. Dkt. No. 25 ¶ 41; Dkt. No. 27-3; Dkt. No. 27-6. Lakeview conveyed the Property to the Secretary of Veteran's Affairs ("VA") by virtue of a Special Warranty Deed recorded on January 6, 2020. Dkt. No. 28-5. Plaintiff received an eviction notice on his door in mid-December 2019. Dkt. No. 25 ¶ 37. On February 6, 2020, VRM, as an authorized agent for the VA, hired the law firm McCalla to initiate a dispossessory proceeding against Plaintiff, seeking to recover possession of the Property. Dkt. No. 28-6. The Glynn County Magistrate Court entered a Writ of Possession in favor of the VA on February 24, 2020. Dkt. No. 28-7. On or around April 20, 2020, the VA conveyed the property back to Lakeview via a Quitclaim Deed. Dkt. No. 28-8.

**The Lawsuit**

Plaintiff filed this action on February 21, 2020 against Bay Equity, Cenlar, VRM (as Manager for Secretary of Veteran

3

Affairs), McCalla, and Does 1 through 5. Dkt. No. 1. On the same day, Plaintiff filed a motion for temporary restraining order ("TRO"). Dkt. No. 2. In response, Defendants Bay Equity, Cenlar, VRM and McCalla filed motions to dismiss, dkt. nos. 12, 15, as well as responses in opposition to the TRO motion, dkt. nos. 13, 17.

**The Hearing**

On August 11, 2020, the Court held a hearing on the motions during which the Parties acknowledged that dispossessory efforts for the Property were postponed due to passage of the CARES Act on March 27, 2020. VRM stated that it had abandoned its efforts to evict Plaintiff from the Property after it was re-conveyed to Lakeview. Plaintiff acknowledged he was still living at the Property.

The Court denied Plaintiff's TRO motion, granted Plaintiff leave to amend his original complaint within ten days, and denied Defendants' motions to dismiss as moot. The Court also ordered Plaintiff to ensure all Defendants were properly served. The Court memorialized its rulings in a written order dated August 13, 2020.

**The Amended Complaint**

Plaintiff filed virtually identical amended complaints[3] on August 21 and 25, 2020. Dkt. Nos. 25, 26. Because the August

---

[3] Although there are formatting differences between the two amended complaints, the substance appears to be identical.

4

21, 2020 amended complaint was timely filed, and because it is virtually identical to the August 25, 2020 amended complaint, the Court deems it the operative amended complaint. The amended complaint drops Bay Equity, McCalla, and Does 1 through 5 as named Defendants but adds NCRC.

## LEGAL AUTHORITY

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although a complaint need not contain detailed factual allegations, it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court does not, however, accept as true threadbare recitations of the elements of the claim and disregards legal conclusions unsupported by factual allegations. Iqbal, 556 U.S.

at 678-79.  At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

Finally, a *pro se* filing is held to a less stringent standard than one drafted by an attorney and is liberally construed.  See Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017) (citation omitted).  However, a pro se filing "must still suggest that there is at least some factual support for a claim."  Id.

## DISCUSSION

### I. Plaintiff's Claims against Bay Equity, McCalla and John Does

Plaintiff's amended complaint does not name Bay Equity, McCalla or John Does 1 through 5 as Defendants.  As such, the Court deems Plaintiff's claims against these Defendants abandoned.  The Clerk is **DIRECTED** to terminate these Defendants as parties to this case.

### II. Plaintiff's Claims against VRM and NCRC

To the extent Plaintiff asserts claims against VRM and NCRC,[4] those claims are **DISMISSED without prejudice** for failure to serve a party under Federal Rule of Civil Procedure 4(m). At the hearing on August 11, 2020, the Court ordered Plaintiff to ensure service was properly made upon Defendants. Plaintiff filed his Amended Complaint on August 21, 2020. Well over ninety days have passed, and the docket reflects no effort on Plaintiff's part to achieve service on VRM or NCRC, and Plaintiff has shown no good cause for his failure to effect service. See, e.g., Clark v. Runyon, 27 F. Supp. 2d 1040, 1041-42 (N.D. Ill. 1998) (noting that plaintiff's action would be dismissed without prejudice for failure to effect service under Rule 4(m) and failing to show good cause for not making timely service); see also id. (plaintiff's pro se status does not excuse failure to comply with procedural requirements related to service).

### III. Plaintiff's Fair Debt Collection Practices Act Claims against Cenlar

Plaintiff claims Cenlar is liable for violating subsections 1692d-f of the FDCPA. See Dkt. No. 25 (Counts I – V). Plaintiff alleges Cenlar sent "letters and notices to Plaintiff,

---

[4] Plaintiff asserts against NCRC claims of breach of good faith and duties of care (Count VII); declaratory judgment (Count VIII); unjust enrichment and promissory estoppel/detrimental reliance (Count IX); and false representation/fraud (Count X). Plaintiff asserts a declaratory judgment claim (Count XI) against VRM. The Court labels Counts I-XI in the order they appear in Plaintiff's amended complaint, because the amended complaint itself does not maintain a clear numbering system.

7

wherein it alleged it had the right to collect and sell [Plaintiff's] property, because of an alleged default and harassing [sic] [Plaintiff] for money it is not entitled to by law." Dkt. No. 25 ¶ 82. Plaintiff also alleges Cenlar violated the FDCPA "by engaging in unfair and unconscionable means to collect or attempt to collect the alleged debt." Id. ¶ 97. Finally, Plaintiff alleges Cenlar violated the FDCPA "when it failed to validate and misrepresented the character, amount, or legal status of the alleged debt associated with the Note when attempting to collect and receive monies it is not entitled to and threaten [sic] foreclose[.]" Id. ¶ 120.

The FDCPA "regulates the practices of debt collectors." Nadalin v. Auto. Recovery Bureau, Inc., 169 F.3d 1084, 1085 (7th Cir. 1999) (internal quotation marks omitted). To prevail in a claim under the FDCPA, the plaintiff must show: (1) he has been subject to collection activity arising from a consumer debt; (2) the defendant qualifies as a "debt collector" under the FDCPA; and (3) "the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." Buckley v. Bayrock Mortg. Corp., No. 1:09-CV-1387-TWT, 2010 WL 476673, at *6 (N.D. Ga. Feb. 5, 2010) (quoting Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060, at *2 (D.N.H. Feb. 9, 2005)).

Cenlar makes various arguments in support of its motion to dismiss, including that it is not a debt collector within the

8

meaning of the FDCPA because the statute's definition of debt collector typically excludes loan servicers.  Dkt. No. 27 at 9. The Court need not answer this question because Plaintiff fails to allege any facts that Cenlar engaged in an act prohibited by 15 U.S.C. § 1692. See Buckley, 2010 WL 476673, at *6.

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.  Further, "[a] debt collector may not use any false, deceptive, or misleading representation or means in

9

connection with the collection of any debt." Id. § 1692e. Finally, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f.

"Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury," but there are limits to that principle. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985). Courts have dismissed § 1692d claims as a matter of law if the facts as alleged do not have a natural consequence of harassing or abusing a person in connection with the collection of a debt. Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006); see also Jeter, 760 F.2d at 1179 (affirming summary judgment for a debt collector because the conduct in question did not create a "tone of intimidation" that violated section 1692d). Listed in § 1692d are examples of abusive conduct, including the use of violence or threats of violence, the use of profane language, the publishing of a list of debtors who have refused to pay a debt, the advertising for sale of a debt in order to coerce payment, and the making of harassing telephone calls. See 15 U.S.C. 1692d. Listed in 1692e are examples of false or misleading representations, including the representation that nonpayment of any debt will result in the debtor's arrest and the threat to take any action that cannot legally be taken or that is not intended to be taken.

10

Finally, listed in 1692f are examples of unfair practices, including the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law and taking or threatening to take any nonjudicial action to effect dispossession of property if there is no present right to possession of the property.

Plaintiff's Complaint does not contain any factual allegations or evidence to support a finding that Cenlar's alleged conduct is the type contemplated by §§ 1692d-f. While Plaintiff alleges Cenlar sent letters and notices to Plaintiff alleging default on the Loan and the right to foreclose on the Property and that Cenlar "harassed" Plaintiff for money through "unfair and unconscionable means," he does not allege what behavior constitutes harassment or unfair and unconscionable means.  Plaintiff makes no claims of intimidation or threats made by Cenlar or obscene or profane language used by Cenlar. Plaintiff also does not point out any specific false or misleading representations made or unfair practices conducted by Cenlar.  The Court cannot find that letters or notices merely informing Plaintiff of the foreclosure proceedings rise to the level of harassment, oppression, abuse, intimidation, misrepresentation or unfair practices proscribed by the FDCPA. See Iqbal, 556 U.S. at 678-79 (stating that the Court does not accept as true threadbare recitations of the elements of a claim

and disregards legal conclusions unsupported by factual allegations).

Moreover, all of Plaintiff's FDCPA claims against Cenlar grow out of Plaintiff's allegation that Cenlar did not prove by production of the original Note that it was entitled to enforce the Note. See, e.g., Dkt. No. 25 ¶¶ 17, 83, 91, 102, 109, 116. Courts have repeatedly rejected this "show me the note" theory. See Walker v. Georgia Bank & Tr. of Augusta, No. CV 114-155, 2014 WL 5591045, at *7 (S.D. Ga. Nov. 3, 2014) (collecting cases). Even if Cenlar's failure to produce the note were actionable in its own right, Plaintiff's allegations regarding Cenlar's actions do not state a claim for relief under the FDCPA. Accordingly, Plaintiff's FDCPA claims against Cenlar are **DISMISSED with prejudice**.

**IV.  Plaintiff's Declaratory Judgment Claims against Cenlar**

Plaintiff next asserts a claim of "declaratory judgment – invalidating foreclosure sale dual tracking/bait and switch" against Cenlar. Dkt. No. 25 at 24 (Count VIII). Essentially, Plaintiff alleges that he applied for a full loan modification with Cenlar through NCRC, and Cenlar went ahead with the foreclosure without giving Plaintiff notice of incomplete applications materials or denial of his loan modification application. See id. at 25. Plaintiff seeks the "voiding and invalidating [of] the trustee's sale . . . and any subsequent

12

transfers of the property thereafter and enjoining Defendants' from taking any action to evict or otherwise dispossess Plaintiff of the property[.]" Id.

In order to be entitled to declaratory relief, a plaintiff must have a valid underlying substantive claim for relief. See, e.g., Giles v. SunTrust Mortg., Inc., No. 1:13-cv-2992, 2014 WL 2779527, at *3 (N.D. Ga. June 19, 2014) (dismissing plaintiff's claims for equitable and declaratory relief "[b]ecause Plaintiff's substantive claims are without merit," and therefore "he is not entitled to the relief he seeks"). In the amended complaint, Plaintiff makes various allegations under the heading for his declaratory relief claim regarding the loan modification application and subsequent foreclosure, but he does not establish or identify a valid cause of action to support the declaratory relief sought. That Cenlar gave Plaintiff the run-around with regard to his application for a loan modification does not, by itself, state a cause of action. Because the underlying cause of action Plaintiff attempts to assert is unclear, his claim for declaratory judgment is **DISMISSED** for failure to state a claim for which relief may be granted.

V. **Plaintiff's State Law Claims**

a. **Conversion**

Plaintiff asserts a conversion claim against Cenlar. Dkt. No. 25 at 20 (Count VI). He alleges Cenlar "converted the

personal property rights (Freeman's chattel) of Plaintiff in his Note for its own use." Id. ¶ 126.

"Conversion is an interference with chattel 'which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'" Salcedo v. Hanna, 936 F.3d 1162, 1171 (11th Cir. 2019) (quoting Restatement (Second) of Torts § 222A). A chattel is a "[m]ovable or transferable property," i.e. personal property, "and not the subject matter of real property." BLACK'S LAW DICTIONARY (11th ed. 2019). To state a claim for conversion under Georgia law, "the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." Washington v. Harrison, 682 S.E.2d 679, 682 (Ga. Ct. App. 2009).

Here, Plaintiff cannot claim conversion of the Property because conversion does not apply to real property. Kin Chun Chung v. JPMorgan Chase Bank, N.A., 975 F. Supp. 2d 1333, 1347 (N.D. Ga. 2013). It follows that Plaintiff must be asserting personal property rights over the Note. Plaintiff's conversion claim must fail, because he cannot show he has title to the Note or the right to possess it. After all, a state court magistrate judge previously determined that, post-foreclosure, possession

14

of the Property belonged to the VA and entered a writ of possession against Plaintiff. It follows that Plaintiff has no right to possession of the Note. Moreover, Plaintiff's "claim appears to be an attempt to repackage a 'produce the note' argument that has been repeatedly rejected by this court, and is therefore due to be dismissed." Clarke v. Branch Banking & Trust Co., No. 1:12-CV-03383-JEC-RGV, 2013 WL 12249558, at *6 (N.D. Ga. Mar. 5, 2013), report and recommendation adopted, No. 1:12-CV-3383-JEC-RGV, 2013 WL 12249557 (N.D. Ga. Sept. 24, 2013); see also Williams v. Ocwen Loan Servicing, LLC, No. 1:14-CV-3531, 2015 WL 11511579, at *7 (N.D. Ga. July 31, 2015) (dismissing a similar conversion claim based on "show me the note" allegations).

### b. Breach of Good Faith and Duties of Care

Plaintiff next asserts against Cenlar a claim for breach of good faith and duties of care. Dkt. No. 25 at 22 (Count VII). "In Georgia, there is no independent cause of action for breach of the covenant of good faith and fair dealing separate from a claim for breach of contract." Borges v. Bank of America, N.A., No. 1:11-cv-3363, 2012 WL 4328374, at *12 (N.D. Ga. May 1, 2012); see also Maddox v. Phelan Halliman Diamond & Jones, PLLC, No. 1:18-cv-5908, 2019 WL 2306208, at *8 (N.D. Ga. April 17, 2019) (dismissing similar breach of duty of good faith claims).

Because Plaintiff does not allege a specific breach of contract, his breach of good faith claim is **DISMISSED**.

### c. Unjust Enrichment

Plaintiff alleges Cenlar is liable for unjust enrichment as a result of foreclosing on the Property while Plaintiff was applying for or participating in a loan modification. Dkt. No. 25 at 26-27 (Count IX). "'[U]njust enrichment applies when as a matter of fact there is no legal contract . . . [.]" Engram v. Engram, 463 S.E.2d 12, 15 (Ga. 1995) (quoting Smith v. McClung, 452 S.E.2d 229 (Ga. Ct. App. 1994)). Here, because Plaintiff's unjust enrichment claim arises from the Security Deed and Note, legal contracts binding Plaintiff, Plaintiff's unjust enrichment claim must be dismissed. See Ceasar v. Wells Fargo Bank, N.A., 744 S.E.2d 369, 374 (Ga. Ct. App. 2013) ("The existence of this written contract precludes [Plaintiff's] unjust enrichment claim.").

### d. Promissory estoppel/detrimental reliance

Finally, Plaintiff alleges Cenlar is liable for promissory estoppel/detrimental reliance as a result of foreclosing on the Property while Plaintiff was applying for or participating in a loan modification. Dkt. No. 25 at 26-27 (Count IX). Here, while Plaintiff generally alleges that he engaged in a loan modification process, his allegations fail to support a cause of action for promissory estoppel because his allegations, even

16

liberally construed, are simply too vague. In Sziek v. U.S. Bank, N.A., the court dismissed a similar promissory estoppel claim. No. 2:12-cv-1, 2012 WL 3756941, at *3 (N.D. Ga. Aug. 28, 2012). In finding that the promise of a future loan modification was too vague, the court noted, "plaintiff does not allege any of the essential terms of the purported modified loan, such as the loan's duration or interest rate." Id. Plaintiff's allegations are similarly vague here, and Plaintiff's promissory estoppel claim is thus due to be **DISMISSED**.

**VI. Leave to Amend**

The Court has already given Plaintiff an opportunity to amend his complaint in order to cure the deficiencies pointed out by Defendants in their initial motions to dismiss. As the Court informed Plaintiff at the hearing, he would be allowed one amendment and no more. Because Plaintiff's amended complaint fails to state a claim against Cenlar for which relief can be granted, those claims are **DISMISSED with prejudice**.

### CONCLUSION

Plaintiff having abandoned his claims against Bay Equity, McCalla and John Does 1 through 5, the Clerk is **DIRECTED** to terminate them as Defendants in this action. Plaintiff having failed to effect service upon Defendants VRM and NCRC, his claims against those Defendants are **DISMISSED without prejudice**.

17

Defendants Bay Equity, VRM and McCalla's motions to dismiss, dkt. nos. 27, 28 and 29, are **DENIED as moot.** Defendant Cenlar's motion to dismiss, dkt. no. 27, is **GRANTED,** and Plaintiff's claims against Cenlar are **DISMISSED with prejudice**. There being no claims remaining, the Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 14th day of December, 2020.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA